**HAMILTON BROWNFIELDS REDEVELOPMENT, LLC, Appellant,**

v.

**DURO TIRE AND WHEEL, Appellee.**

[Cite as *Hamilton Brownfields Redevelopment, LLC v. Duro Tire & Wheel,* 156 Ohio App.3d 525, 2004-Ohio-1365.]

Court of Appeals of Ohio,
Twelfth District, Butler County.

No. CA2003–06–141.

Decided March 22, 2004.

526

Eberly McMahon Hochscheid LLC and David A. Eberly, for appellant.

Pickrel, Schaeffer & Ebeling, Gregory S. Page and Michael Sandner, for appellee.

———

WILLIAM W. YOUNG, Presiding Judge.

{¶ 1} Plaintiff-appellant, Hamilton Brownfields Redevelopment, LLC ("Hamilton Brownfields"), appeals from a judgment of the Butler County Court of Common Pleas granting defendant-appellee, HWA Fong Rubber USA, Inc., d.b.a. Duro Tire & Wheel Corp. ("Duro"), a judgment in the amount of $27,157.49 pursuant to a lease of a commercial warehouse.

{¶ 2} Hamilton Brownfields owns the former Mosler Safe Building in Hamilton, Ohio, and leases it as warehouse space. In 2000, it leased space in the building to Duro to store a substantial number of rubber tires.

{¶ 3} In September 2000, fire inspectors for the city of Hamilton visited the warehouse. The inspectors concluded that Hamilton Brownfields did not possess the required occupancy permit for the bulk storage of tires, that is, a "H–3 High Hazard" occupancy permit. Instead, Hamilton Brownfields' occupancy permit classified the warehouse as a "S–1 Moderate Hazard Storage." The inspectors also concluded that the tires, which were stacked 20 to 25 feet high, were improperly stored for tire safety and needed to be stored at a height of less than eight feet. The inspectors required Hamilton Brownfields to have a qualified contractor, consultant, or engineer determine whether the sprinkler system in the warehouse was adequate for tire storage.

{¶ 4} In October 2000, Duro learned about the fire code problems and that the Hamilton Fire Department had concerns about bulk storage of rubber tires at the warehouse. Duro contacted Hamilton Brownfields to express concern about their lease. On October 31, 2000, William Korte, managing partner for Hamilton Brownfields, sent a letter to David Johnson, Duro's warehouse manager, directing him to stack the tires at a height of five feet and to stop bringing additional tires into the warehouse until they resolved the occupancy issue with the city of Hamilton. In November 2000, Korte sent a letter to Johnson by facsimile, which stated in part:

{¶ 5} "We are aware you have been making efforts to comply with the 5' stacking requirement and appreciate your cooperation. On * * * December 5, 2000, * * * Hamilton Fire Chief Dawson is going to meet me at the site to discuss [the adequacy of the sprinkler system] and inspect the building. We have indicated we are going to expend a significant amount of money to meet Hamilton and the State of Ohio's laws, rules and regulations so we can store Duro's tires. Please have all tires stacked at the 5' level by the meeting."

{¶ 6} In December 2000, Hamilton Brownfields and Duro entered into a new lease agreement allowing Duro to continue leasing the warehouse for storage in 2001. The lease contained no express provision allocating risks regarding the pending fire code issues. Duro continued to store rubber tires in bulk in the warehouse. Hamilton Brownfields continued meeting and communicating with the Hamilton Fire Chief.

{¶ 7} Unsatisfied with Duro's bulk storage of tires in the warehouse and with the sprinkler system, the Hamilton Fire Department ultimately cited both Duro and Hamilton Brownfields in May and June 2001 for fire code violations. On or about June 1, 2001, Korte ordered Duro to remove its tires from the warehouse within 120 days. Thereafter, Duro stopped paying rent and began removing over

400,000 tires from the warehouse. In August 2001, Hamilton Brownfields filed a forcible entry and detainer action in the Hamilton Municipal Court. In September 2001, the municipal court ordered Duro to vacate the warehouse by September 30, 2001, for failure to pay the rent. When Duro vacated the premises on September 30, 2001, approximately 9,000 tires remained in the warehouse.

{¶ 8} Hamilton Brownfields filed a complaint against Duro, alleging breach of contract and unjust enrichment. Duro filed a counterclaim against Hamilton Brownfields, alleging breach of contract and misrepresentation. On January 7, 2003, the magistrate found that Hamilton Brownfields had breached the lease agreement, stating: "Since the purpose of the warehouse lease was to store tires, Hamilton Brownfields' action in ordering Duro to remove its tires from the warehouse deprived Duro of the entire beneficial use of the leasehold. Therefore, Hamilton Brownfields breached the covenant of quiet enjoyment and possession implied in the lease agreement with Duro." The magistrate ordered Hamilton Brownfields to pay Duro $27,157.49 in damages. The damages included the base rent paid by Duro for June 2001.

{¶ 9} Hamilton Brownfields subsequently requested findings of facts and conclusions of law. The magistrate denied the request, instead referring to his 11–page decision. Hamilton Brownfields then filed 17 objections to the magistrate's decision. By decision and entry filed May 7, 2003, the trial court overruled the objections and affirmed the magistrate's decision. This appeal follows in which Hamilton Brownfields raises four assignments of error, which will be considered out of order.

{¶ 10} In its second assignment of error, Hamilton Brownfields argues that the trial court erred by overruling its request for separate findings of facts and conclusions of law.

{¶ 11} Civ.R. 52 provides in part that "[w]hen questions of fact are tried by the court without a jury, judgment may be general for the prevailing party unless one of the parties in writing requests otherwise, * * * in which case, the court shall state in writing the conclusions of fact found separately from the conclusions of law."

{¶ 12} The purpose of separately stated findings of facts and conclusions of law is to enable a reviewing court to determine the existence of assigned error. *Domestic Linen Supply & Laundry Co. v. Kenwood Dealer Group, Inc.* (1996), 109 Ohio App.3d 312, 328, 672 N.E.2d 184. If the court's opinion, together with other parts of the trial court's record, provides an adequate basis upon which a reviewing court can decide the legal issues presented, there is substantial compliance with Civ.R. 52. Id. After thoroughly reviewing the record and the trial court's written decision, we find that they provide this court with an

adequate basis upon which to decide the assignments of error presented. Hamilton Brownfields' second assignment of error is overruled.

{¶ 13} In its fourth assignment of error, Hamilton Brownfields argues that the trial court erred by finding that the forcible entry and detainer action in the municipal court did not bar Duro's counterclaims.

{¶ 14} R.C. Chapter 1923 governs forcible entry and detainer actions and provides that "[j]udgments under this chapter are not a bar to a later action brought by either party." R.C. 1923.03. A forcible entry and detainer action is a summary proceeding "provided by statute and intended to affect only the question of the present right to possess real property." *Cuyahoga Metro. Hous. Auth. v. Jackson* (1981), 67 Ohio St.2d 129, 130–131, 21 O.O.3d 81, 423 N.E.2d 177 (superseded on other grounds by statute as stated in *Miele v. Ribovich* [1990], 90 Ohio St.3d 439, 739 N.E.2d 333). A forcible entry and detainer action "determines the right to immediate possession of the property and nothing else." *Seventh Urban, Inc. v. Univ. Circle Prop. Dev., Inc.* (1981), 67 Ohio St.2d 19, 25, 21 O.O.3d 12, 423 N.E.2d 1070, fn. 11.

{¶ 15} In the case at bar, the issue of breach of the covenant of quiet enjoyment was *not* before the municipal court. Rather, the only issue decided by the municipal court (and the only issue before it) was who was entitled to possession of the warehouse. Hamilton Brownfields cites *Marous/Church, LLC v. Stanich* (Dec. 7, 2001), Lake App. No. 2000–L–188, 2001 WL 1561107, for the proposition that notwithstanding R.C. 1923.03, "a forcible entry and detainer action bars relitigation of issues that were actually and necessarily decided in the former action." Id. at * 2. In *Marous/Church,* however, the issue of breach of the covenant of quiet enjoyment was in fact raised in the forcible entry and detainer action. Such was not the case here. Consequently, the holding and reasoning of *Marous/Church* do not apply here.

{¶ 16} We therefore hold that the trial court did not err by finding that the forcible entry and detainer action in the municipal court did not bar Duro's counterclaims. Hamilton Brownfields' fourth assignment of error is overruled.

{¶ 17} In its first assignment of error, Hamilton Brownfields argues that the trial court erred by admitting Korte's November 2000 letter to Johnson. Hamilton Brownfields contends that the letter, which stated that Hamilton Brownfields would expend a significant amount of money to meet regulations so that it could store Duro's tires, violates the parol evidence rule because it modifies the terms of the lease agreement. According to Hamilton Brownfields, the letter was used by Duro to suggest that Hamilton Brownfields agreed to upgrade the warehouse to meet Duro's bulk storage needs, even though the lease did not require Hamilton Brownfields to upgrade the warehouse.

{¶ 18} "A party may * * * proffer evidence of a contemporaneous oral agreement when the agreement was made in order to induce a party to enter into a written contract." *Walters v. First Natl. Bank of Newark* (1982), 69 Ohio St.2d 677, 681, 23 O.O.3d 547, 433 N.E.2d 608. However, "the parol evidence rule precludes the introduction of evidence of conversations or declarations which occur prior to or contemporaneous with a written contract and *which attempt to vary or contradict terms contained in the writing.*" (Emphasis sic.) *Ameri-Trust Co. v. Murray* (1984), 20 Ohio App.3d 333, 335, 20 OBR 436, 486 N.E.2d 180.

{¶ 19} In overruling Hamilton Brownfields' objection to the admission of the letter, the trial court found that (1) the letter was not introduced to vary or contradict the terms of the lease; (2) rather, the letter was introduced for the purpose of demonstrating that Hamilton Brownfields made inducements to Duro to enter into the lease; and (3) the letter did not form the basis of the magistrate's decision, as the decision was based upon a breach of a covenant of quiet enjoyment.

{¶ 20} Upon thoroughly reviewing the record and the magistrate's decision, we agree with the trial court. While the magistrate referred to the letter in his decision, it was only to show that "Hamilton Brownfields knew that Duro was currently using and was planning to continue to use the warehouse space for tire storage when it entered into the lease for 2001." The record clearly shows that the magistrate did not base his decision upon the letter. Rather, his decision was based solely on a breach of a covenant of quiet enjoyment.

{¶ 21} The record also clearly shows that the letter was introduced by Duro, along with oral assurances from Korte, to show that, had it not been for Korte's assurances that Hamilton Brownfields would resolve one way or another the fire code problems, Duro would not have renewed the lease for 2001. Because the letter was not used to vary or contradict the terms of the lease agreement, its admission did not violate the parol evidence rule. The trial court, therefore, did not err by admitting the letter. Hamilton Brownfields' first assignment of error is overruled.

{¶ 22} In its third assignment of error, Hamilton Brownfields argues that the trial court erred by finding that it breached a covenant of quiet enjoyment. Hamilton Brownfields contends that its action in ordering Duro to remove the tires from the warehouse cannot constitute a breach of a covenant of quiet enjoyment when it "did not unilaterally make this decision—it successfully prosecuted a [forcible entry and detainer] action in which the [municipal court] ordered the same thing, i.e., that Duro must vacate at the end of September 2001."

{¶ 23} In Ohio, a covenant of quiet enjoyment is implied into every lease contract for realty. *Dworkin v. Paley* (1994), 93 Ohio App.3d 383, 386, 638 N.E.2d 636. Such covenant protects the tenant's right to a peaceful and undisturbed enjoyment of his leasehold. Id. The covenant is breached when the landlord obstructs, interferes with, or takes away from the tenant in a substantial degree the beneficial use of the leasehold. Id. The degree of the impairment required is a question for the finder of fact. Id. When the landlord breaches the covenant of quiet enjoyment, the tenant is relieved of its obligation to pay rent for the premises. See *GMS Mgt. Co., Inc. v. Datillo* (June 15, 2000), Cuyahoga App. No. 75838, 2000 WL 776982.

{¶ 24} Under its 2000 lease, Duro stored tires in bulk in the warehouse with the knowledge of Hamilton Brownfields. Upon renewing the lease for 2001, Duro continued to store tires in bulk in the warehouse, again with the knowledge of Hamilton Brownfields. There is no evidence that Duro was using the warehouse to store anything other than a substantial number of rubber tires. The record clearly shows that the very and sole purpose of the parties' lease agreement was to store tires in the warehouse.

{¶ 25} Unfortunately, Hamilton Brownfields did not have the proper occupancy permit for tire storage. Nor did it have a sprinkler system satisfactory to the Hamilton Fire Department. Ultimately, Hamilton Brownfields did not take the necessary steps to qualify its warehouse for tire storage. Rather, when faced with the prospect of spending thousands of dollars to comply with the fire department orders, Hamilton Brownfields instead chose to order Duro to vacate the premises within 120 days. It was not until after it was so ordered that Duro stopped paying rent. Because the very purpose of the lease was to store tires in the warehouse, by ordering Duro to remove the tires from the warehouse within 120 days, Hamilton Brownfields did deprive Duro of the entire beneficial use of the warehouse. The trial court therefore did not err in finding that Hamilton Brownfields breached the covenant of quiet enjoyment.

{¶ 26} Hamilton Brownfields' argument that because it successfully prosecuted a forcible entry and detainer action it cannot have breached a covenant of quiet enjoyment is disingenuous. Hamilton Brownfields ordered Duro to vacate on or about June 1, 2001, thereby breaching the covenant of quiet enjoyment. Thereafter, Duro stopped paying the rent. Hamilton Brownfields then filed a forcible entry and detainer action against Duro for failure to pay rent. However, as noted earlier, the issue of breach of the covenant of quiet enjoyment was *not* before the municipal court. It is clear that Hamilton Brownfields' breach of covenant of quiet enjoyment happened first, which in turn triggered Duro's action in no longer paying rent, which in turn triggered the filing of the forcible entry and detainer action. Hamilton Brownfields cannot use its successful prosecution

of the forcible entry and detainer action as a shield against its own breach of the covenant.

{¶ 27} Hamilton Brownfields also argues that Duro should not have been awarded damages for June 2001. We disagree. As noted earlier, a tenant is relieved of its obligation to pay rent upon a landlord's breach of the covenant of quiet enjoyment. See *GMS Mgt. Co., Inc.*, supra, Cuyahoga App. No. 75838, 2000 WL 776982. The Ohio Supreme Court has allowed a tenant whose covenant has been breached to recover all rent paid for the period during which the landlord's action has taken away a part of the privileges leased to him. See *Frankel v. Steman* (1915), 92 Ohio St. 197, 110 N.E. 747. Hamilton Brownfields' third assignment of error is overruled.

Judgment affirmed.

WALSH and VALEN, JJ., concur.