[Cite as *Telecom Acquisition Corp. I, Inc. v. Lucic Ents., Inc.*, 2016-Ohio-1466.]

# Court of Appeals of Ohio

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

---

### JOURNAL ENTRY AND OPINION
### No. 102119

---

## TELECOM ACQUISITION CORP. I, INC.

### PLAINTIFF-APPELLEE/
### CROSS-APPELLANT

vs.

## LUCIC ENTERPRISES, INC.

### DEFENDANT-APPELLANT/
### CROSS-APPELLEE

---

**JUDGMENT:**
AFFIRMED

---

Civil Appeal from the
Cleveland Municipal Court, Housing Division
Case No. 2013 CVG 007699

**BEFORE:** Keough, P.J., McCormack, J., and S. Gallagher, J.

**RELEASED AND JOURNALIZED:** April 7, 2016

**ATTORNEYS FOR APPELLANT/CROSS-APPELLEE**

Eric Weiss
Komlavi Atsou
Cavitch, Familo & Durkin Co., L.P.A.
1300 East Ninth Street, 20th Floor
Cleveland, Ohio 44114


**ATTORNEY FOR APPELLEE/CROSS-APPELLANT**

Randy J. Hart
Randy J. Hart, L.L.P.
3601 South Green Road, Suite 309
Beachwood, Ohio 44122

KATHLEEN ANN KEOUGH, P.J.:

{¶1} Defendant-appellant/cross-appellee, Lucic Enterprises, Inc. ("Lucic"), appeals from multiple decisions rendered by the trial court before, during, and after trial. Plaintiff-appellee/cross-appellant, Telecom Acquisition Corp., Inc. ("Telecom"), appeals from the trial court's in-part denial of Telecom's motion for summary judgment regarding payment of rent. For the reasons that follow, we affirm.

{¶2} On May 21, 2013, Telecom filed suit against Lucic for failure to pay rent, failure to perform under the lease, and for money damages. In response, Lucic filed a counterclaim against Telecom for breach of contract, unjust enrichment, and interference with a business relationship.

{¶3} Telecom is the owner of commercial property located at 1204 Old River Road in Cleveland, Ohio (hereinafter "the Premises"). Through the assignment of the original 2004 lease (hereinafter "the Lease"), Lucic occupied the Premises as a tenant from approximately April 14, 2006, until July 23, 2013. The assignment was deemed valid in a prior 2009 lawsuit. *See Telecom Acquisition Corp. I v. Lucic Ents., Inc.*, 8th Dist. Cuyahoga No. 95951, 2012-Ohio-472.

{¶4} The Lease was set to expire by its terms on August 31, 2014. Pursuant to the terms of the Lease, rent was due on the first day of each month; however, if rent was not paid by the 10th day of the month, a 5 percent late charge was imposed. As of the date of the filing of Telecom's complaint for failure to pay rent, Lucic's rent obligation was $8,860.96 per month. This amount is not in dispute. Also not in dispute is that Lucic did not timely pay the rent for May 2013, which prompted Telecom to file the underlying action. In its prayer for relief,

Telecom contends that using the formula provided in the Lease, Lucic would owe Telecom $170,190.57 for unpaid rent at the end of the Lease.

{¶5} Lucic filed its answer and counterclaim, contending that Telecom breached the Lease and interfered with its quiet enjoyment and possession of the property when it failed to maintain the structure of the building and the roof as required under Article V of the Lease. Lucic alleged that the roof leaked causing damage to its property inside the Premises. Lucic also asserted claims for unjust enrichment because it made significant improvements to the Premises. Lucic's final claim was that Telecom — specifically, Telecom's President Michael A. Tricarichi ("Tricarichi") — interfered with Lucic's business relationship with its African-American customers by uttering racially insensitive comments and slurs in the presence of its customers and staff, which caused those customers to stop frequenting Lucic's business.

{¶6} Both parties filed cross-motions for summary judgment. The trial court granted partial summary judgment in favor of Telecom's claim for unpaid rent. The court agreed with Telecom that it was entitled to judgment on its claim for unpaid rent, but only for the months that Lucic remained in the Premises without paying rent. Therefore, the trial court awarded Telecom damages in the amount of $27,023, which represented rent for May, June, and July 2013. The trial court denied Telecom's request for summary judgment on the remaining months, however, because it found that genuine issues of material fact existed whether Telecom mitigated its damages.

{¶7} The trial court also granted summary judgment in favor of Telecom on Lucic's claim for unjust enrichment, finding that the Lease allows Lucic to retain possession of any improvement items that can be removed from the Premises with minimal damage or where the damage could properly be repaired.

{¶8} The trial court denied Lucic's request for summary judgment on its claims for breach of contract for failure to maintain the roof and interference with a business relationship, finding that genuine issues of material fact existed about whether the roof leaks were caused by Telecom's failure to maintain the roof and whether Tricarichi's actions caused damage to Lucic's business.

{¶9} The matter proceeded to a jury trial on these remaining causes of action. Following a two-week trial, the jury awarded judgment in favor of Telecom in the amount of $56,068.89 on its claim for past and future unpaid rent. The jury found in favor of Telecom on all of Lucic's remaining counterclaims. Ultimately, the trial court entered a final monetary judgment in favor of Telecom in the amount of $74,230.93.

{¶10} Lucic now appeals, raising seven assignments of error, that will be addressed together and out of order where appropriate. Telecom cross-appeals raising one assignment of error.[1]

## I. Lucic's Appeal

### A. Jury Instructions

{¶11} Lucic's first two assignments of error pertain to the instructions the jury received from the court. Requested jury instructions should ordinarily be given if they are correct statements of law applicable to the facts in the case and reasonable minds might reach the conclusion sought by the specific instruction. *Murphy v. Carrollton Mfg. Co.*, 61 Ohio St.3d 585, 591, 575 N.E.2d 828 (1991). In Ohio, it is well established that the trial court will not

---

[1]Telecom's notice of cross-appeal states that it is appealing both the trial court's summary judgment ruling on April 25, 2014, and the trial court's oral ruling on Telecom's oral motion for directed verdict made at trial. However, Telecom has not assigned any error for our review regarding the trial court's directed verdict ruling; thus, abandoning that ruling in this appeal.

instruct the jury where there is no evidence to support an issue. *Riley v. Cincinnati*, 46 Ohio St.2d 287, 348 N.E.2d 135 (1976), paragraph two of the syllabus. Therefore, "the proper standard of review for an appellate court is whether the trial court's refusal to give a requested jury instruction constituted an abuse of discretion under the facts and circumstances of the case." *Harris v. Noveon, Inc.*, 8th Dist. Cuyahoga No. 93122, 2010-Ohio-674, ¶ 20, citing *Chambers v. Admr., Ohio Bur. of Workers Comp.*, 164 Ohio App.3d 397, 2005-Ohio-6086, 842 N.E.2d 580, ¶ 6 (9th Dist.).

> "In determining the appropriateness of jury instructions, an appellate court reviews the instructions as a whole. *Bailey v. Emilio C. Chu, M.D., Inc.* (1992), 80 Ohio App.3d 627, 631, 610 N.E.2d 531; *Wagenheim v. Alexander Grant & Co.* (1983), 19 Ohio App.3d 7, 16, 19 Ohio B. 71, 482 N.E.2d 955. If, taken in their entirety, the instructions fairly and correctly state the law applicable to the evidence presented at trial, reversible error will not be found merely on the possibility that the jury may have been misled. *Ohio Farmers Ins. Co. v. Cochran* (1922), 104 Ohio St. 427, 135 N.E. 537, paragraph six of the syllabus; *Stonerock v. Miller Bros. Paving, Inc.* (1991), 72 Ohio App.3d 123, 134, 594 N.E.2d 94. Moreover, misstatements and ambiguity in a portion of the instructions will not constitute reversible error unless the instructions are so misleading that they prejudicially affect a substantial right of the complaining party. *Becker v. Lake Cty. Mem. Hosp. West* (1990), 53 Ohio St.3d 202, 208, 560 N.E.2d 165; *Stonerock*, 72 Ohio App.3d at 134, 594 N.E.2d 94."

*Harris* at ¶ 22, quoting *Wozniak v. Wozniak*, 90 Ohio App.3d 400, 410, 629 N.E.2d 500 (9th Dist.1993).

### 1. Quiet Enjoyment

**{¶12}** Relevant to this assignment of error and pursuant to the terms of the Lease, Lucic occupied the entire interior and exterior of the building and grounds of the Premises for the purpose of operating a liquor permit business, i.e., a nightclub. Lucic's occupation of the Premises was in exchange for Lucic's payment of rent, and Telecom was responsible for maintaining the building structure and roof.

{¶13} In Lucic's counterclaim and at trial, it was alleged that throughout Lucic's tenancy, the roof often leaked and because of the leaks, Lucic's property, trade fixtures, and the interior areas were damaged. Lucic alleged that despite advising Telecom about the leaks, no repairs were made or the measures taken by Telecom to prevent future leaks were inadequate. Lucic argued that Telecom's failure to maintain the roof was a breach of quiet enjoyment; thus, it was entitled to damages. The trial court denied Lucic's request to instruct the jury on breach of quiet enjoyment as an independent cause of action, but did instruct the jury "on quiet enjoyment as an affirmative defense."

{¶14} In its first assignment of error, Lucic contends that the trial court committed reversible error when it refused to instruct the jury on Lucic's counterclaim for breach of the covenant of quiet enjoyment as an independent cause of action. Telecom argues that the trial court's decision was not an abuse of discretion because in order to maintain an action for breach of quiet enjoyment, there must be some eviction — either actual or constructive. Because Lucic continued to retain possession of the premises, breach of the covenant of quiet enjoyment could not be maintained as an independent action. We agree.

{¶15} Breach of the covenant of quiet enjoyment can be an affirmative claim for relief if the claim is supported by the evidence. "In Ohio, a covenant of quiet enjoyment is implied into every lease contract for realty." *Dworkin v. Paley*, 93 Ohio App.3d 383, 386, 638 N.E.2d 636 (8th Dist.1994). Such covenant protects the tenant's right to a peaceful and undisturbed enjoyment of his leasehold. *Id.*, citing *Glyco v. Schultz*, 35 Ohio Misc. 25, 33, 289 N.E.2d 919 (1972). The covenant is breached when the landlord obstructs, interferes with, or takes away from the tenant in a substantial degree the beneficial use of the leasehold. *Id.*, citing *Howard v. Simon*, 18 Ohio App.3d 14, 16, 480 N.E.2d 99 (8th Dist.1984). Although the degree of the

impairment is a question for the finder of fact, to constitute a breach of the covenant, "the interference with the tenant's quiet enjoyment must be so substantial as to be tantamount to an eviction, actual or constructive." *GMS Mgt. Co., Inc. v. Datillo*, 8th Dist. Cuyahoga No. 75838, 2000 Ohio App. LEXIS 2626 (June 15, 2000); *Hamilton Brownfields Redevelopment L.L.C. v. Duro Tire & Wheel*, 156 Ohio App.3d 525, 2004-Ohio-1365, 806 N.E.2d 1039, ¶ 23 (12th Dist.).

{¶16} Constructive eviction occurs when the landlord interferes with the tenant's possession and enjoyment of the premises, and the acts of interference by the landlord compel the tenant to leave. *Foote Theatre, Inc. v. Dixie Roller Rink, Inc*., 14 Ohio App.3d 456, 457, 471 N.E.2d 866 (3d Dist.1984). The theory of constructive eviction is that the tenant is in effect dispossessed, though not forcibly deprived of possession. *Id*. at 457-458.

{¶17} In this case, the evidence at trial showed that Lucic was never evicted, either actually or constructively, and that it maintained possession of the premises after the actions that allegedly caused the breach — the leaking roof, which occurred as early as 2010. In fact, Lucic continued to maintain possession and pay rent despite the leaking roof. No evidence was presented that Lucic withheld rent payments because of the leaking roof or because of Telecom's interference with Lucic's quiet enjoyment or business relationships. *Compare Hamilton Brownfields* (tenant's quiet enjoyment was breached when landlord ordered tenant to vacate the premises because landlord did not want to obtain proper permit for tenant's prior and known use of the property).

{¶18} Therefore, because the evidence did not support an affirmative claim for relief on Lucic's claim for breach of the covenant of quiet enjoyment, the trial court did not abuse its discretion in refusing to give the jury an instruction on this claim. Accordingly, Lucic's first assignment of error is overruled.

## 2. Breach of Contract — Intent Instruction

**{¶19}** Lucic brought a counterclaim against Telecom for breach of contract. In its amended answer and counterclaim, Lucic contended that the Lease required Telecom to maintain the structure of the building and the roof. Lucic alleged that Telecom failed to maintain the roof, which leaked and caused damage to Lucic's property; thus breaching the Lease. Lucic alleged that Telecom's actions were "intentional, willful and malicious and were committed * * * with deliberate and malicious intent for the purpose of injuring Lucic * * *." (Amended Answer & Counterclaim, paragraph 36. Docket #79.)

**{¶20}** In response to the court's proposed instructions, Lucic filed written objections to the inclusion of "intent" in the elements of breach of contract. Although the trial court heard arguments on the objections filed, no specific argument was made either in support of or against this instruction, and no ruling was made by the trial court. However, at the conclusion of trial, the court gave the following instruction:

> Failure to Maintain Roof: Defendant alleges that the lease required plaintiff to maintain the roof. Defendant alleges that plaintiff materially and intentionally breached the lease by failing to maintain the roof and that this failure caused damage to defendant's property and business.
>
> In order to find for the defendant, you must find by the greater weight of the evidence, that: The lease required plaintiff to maintain the roof; plaintiff intentionally failed to maintain the roof; defendant had substantially performed its obligations under the lease at the time when plaintiff failed to maintain the roof; and the failure to maintain the roof caused damage to defendant's property and business.

(Tr. 960-961.)

**{¶21}** Lucic contends in its second assignment of error that the trial court committed reversible error when it instructed the jury to consider Telecom's intent when deciding whether

or not Telecom breached the lease agreement by failing to maintain the roof because "intent" is not an element of breach of contract.

{¶22} Lucic also presented this argument to the trial court in its motion for a new trial. The trial court denied Lucic's request for a new trial on this basis because it believed that the instruction was consistent with Lucic's allegation in its counterclaim that Telecom breached the Lease by intentionally failing to maintain the roof.

{¶23} "In order to substantiate a breach of contract claim, a party must establish four elements: (1) a binding contract or agreement was formed; '[(2)] the nonbreaching party performed its contractual obligations; [(3)] the other party failed to fulfill its contractual obligations without legal excuse; and [(4)] the nonbreaching party suffered damages as a result of the breach.'" *Prime Props., Ltd. Partnership v. Badah Ents.*, 8th Dist. Cuyahoga No. 99827, 2014-Ohio-206, ¶ 13, quoting *Textron Fin. Corp. v. Nationwide Mut. Ins. Co.*, 115 Ohio App.3d 137, 144, 684 N.E.2d 1261 (9th Dist.1996), citing *Garofalo v. Chicago Title Ins. Co.*, 104 Ohio App.3d 95, 108, 661 N.E.2d 218 (8th Dist.1995). Accordingly, whether a party intentionally breached a contract is not an element that must be proven to substantiate a breach of contract claim. The inclusion of the additional element of intent was therefore improper.

{¶24} However, it is apparent why the trial court included the intent element in the jury instructions. As the trial court stated in its decision denying Lucic's motion for a new trial, Lucic alleged that the breach was "intentional, willful, and malicious"; thus, an instruction that mimicked the allegations was warranted. However, these types of allegations are asserted when punitive damages are sought. Therefore, although Lucic made these allegations regarding Telecom's actions, these words do not transform a simple breach of contract into a tort for which

punitive damages could be awarded. *See Ketcham v. Miller*, 104 Ohio St. 372, 136 N.E. 145 (1922) (use of the word malicious does not transform a breach of contract into a tort action; punitive damages may not be recovered in a breach of contract action).

**{¶25}** Nevertheless, the juror interrogatories demonstrate that Lucic was unsuccessful on its counterclaim for damages for failure to maintain the roof not because of the improper instruction, but because the jury found that (1) Telecom substantially performed its obligation to maintain the roof from June 10, 2010, through July 2013; (2) Lucic did not substantially perform its obligations under the Lease at the time of the roof leaks; and (3) it was not proven by a preponderance of the evidence that Telecom's failure to maintain the roof caused Lucic damage. *See* Jury Interrogatories Nos. 14, 16, and 21.

**{¶26}** Accordingly, Lucic's second assignment of error is overruled.

### B. Motion for New Trial

**{¶27}** In its third and seventh assignments of error, Lucic challenges the trial court's denial of its motion for a new trial. In reviewing its motion, Lucic moved for a new trial on a variety of grounds, but specific to these assignments of error, Lucic requested a new trial pursuant to Civ.R. 59(A)(1) and 49(B) because the general verdict and the interrogatory answers were inconsistent.

**{¶28}** Civ.R. 59(A)(1) provides a trial court with discretion to grant a new trial when there is an "irregularity" in the proceedings that prevents a party from having a fair trial. *Druzin v. S.A. Comunale Co.*, 8th Dist. Cuyahoga No. 102674, 2015-Ohio-4699, ¶ 14. "'The rule preserves the integrity of the judicial system when the presence of serious irregularities in a proceeding could have a material adverse effect on the character of and public confidence in judicial proceedings.'" *Id.*, quoting *Wright v. Suzuki Motor Corp.*, 4th Dist. Meigs Nos. 03CA2,

03CA3, and 03CA4, 2005-Ohio-3494, ¶ 114. Great deference is afforded to the trial court's decision denying or granting a motion for a new trial pursuant to Civ.R. 59(A)(1) and a reviewing court will not reverse the decision absent a showing that the court abused its discretion. *Id.*, citing *Koch v. Rist*, 89 Ohio St.3d 250, 251, 730 N.E.2d 963 (2000).

### 1. Opening Statement

{¶29} During opening statements, Telecom's counsel made reference to the prior 2009 lawsuit. Counsel told the jurors that the allegations Lucic made in the 2009 lawsuit were the same allegations Lucic was making in the present case. Telecom also told the jurors that it was successful in the 2009 case. Lucic objected, and the trial court sustained the objection.

{¶30} Despite the court's ruling, Telecom's counsel again referred to the 2009 lawsuit. Again, Telecom told the jurors that Lucic's allegations made in the 2009 lawsuit were the same in this case. Telecom again told the jurors that it was successful in the 2009 lawsuit; thus, the reason for this current claim against Telecom is "simply retaliation." (Tr. 25.) Telecom further told the jurors that Lucic "lashed out" by filing this claim, just like Lucic "lashed out in 2009, [when] they filed a counterclaim." (Tr. 35.) Although Telecom continued to make these statements, Lucic did not raise another objection, make a continuing objection, or move to strike.

{¶31} In its third assignment of error, Lucic contends that the trial court abused its discretion when it declined to order a new trial as a result of Telecom counsel's improper and highly prejudicial remarks during opening statements about the counterclaim Lucic filed in the 2009 lawsuit.

{¶32} Opening statements are not evidence. Opening statements are an outline of the case to be presented and are intended to give the jury a general idea of what each side expects the evidence to show. *State v. Wilson*, 1st Dist. Hamilton No. C-000670, 2002-Ohio-1854, citing

*State v. Johnson*, 1st Dist. Hamilton No. C-950493, 1996 Ohio App. LEXIS 4163 (Sept. 25, 1996). Opening statements often serve to state the party's theory of the case. *State v. Inman*, 4th Dist. Ross No. 13CA3374, 2014-Ohio-786, ¶ 29, citing *State v. Warmus*, 197 Ohio App.3d 383, 2011-Ohio-5827, 967 N.E.2d 1223, ¶ 24 (8th Dist.)

{¶33} Counsel should be afforded latitude by the trial court in making an opening statement. *Columbus v. Hamilton*, 78 Ohio App.3d 653, 657, 605 N.E.2d 1004 (10th Dist.1992), citing *Maggio v. Cleveland*, 151 Ohio St. 136, 84 N.E.2d 912 (1949), paragraph two of the syllabus. However,

> when [counsel] deliberately attempts to influence and sway the jury by a recital of matters foreign to the case, which matters he knows or ought to know cannot be shown by competent or admissible evidence, or when he makes a statement through accident, inadvertence or misconception which is improper and patently harmful to the opposing side, it may constitute the basis for the ordering of a mistrial or for the reversal by a reviewing court of a judgment favorable to the party represented by such counsel.

*Maggio* at 140-141, citing 39 Ohio Jurisprudence, 610, Section 38; 53 American Jurisprudence, 357, Section 454 et seq.

{¶34} In this case, the court instructed the jury on two separate occasions that opening statements are not evidence. *See* tr. 8 ("These statements are not evidence, but rather, a preview of the claims made by each party and an outline of what they expect the evidence to be. Opening statements provide you with an outline or roadmap designed to help you follow the evidence as it is presented."); tr. 947. ("Opening statements are designed to assist the jury, they are not evidence.").

{¶35} While we agree that Telecom's counsel should not have continued comparing the 2009 lawsuit to the instant case during opening statements after the trial court sustained Lucic's

objection, we cannot say that the entire case was tainted or prejudiced to the extent that but for the statements, the jury would have reached a different conclusion.

**{¶36}** The jury learned about the 2009 lawsuit through the testimonies of multiple witnesses. As the trial court noted in its written decision denying Lucic's motion for a new trial, "both sides sought to introduce information regarding the previous litigation between the parties." Therefore, the jury heard evidence from both Lucic and Telecom about the 2009 lawsuit, the issues it involved, and the outcome, all of which occurred after opening statements. In fact, Lucic elicited testimony from Valentina Lucic ("Valentina") during her direct examination about the prior litigation and the result. *See, e.g.*, tr. 243-244.

**{¶37}** Accordingly, the trial court did not abuse its discretion in denying Lucic's request for a new trial on the basis of improper opening statement remarks. Lucic's third assignment of error is overruled.

## 2. Inconsistent Verdicts

**{¶38}** In its seventh assignment of error, Lucic contends that the trial court abused its discretion in denying its motion for a new trial because the jury's answers to the interrogatories regarding Lucic's counterclaim for breach of contract for failure to maintain the roof were inconsistent with its general verdict. Specifically, Lucic contends that interrogatory Nos. 17 and 20 were inconsistent with the general verdict.

**{¶39}** Civ.R. 49(B) provides in relevant part that, "[W]hen one or more of the answers [to the interrogatories] is inconsistent with the general verdict, judgment may be entered pursuant to Rule 58 in accordance with the answers, notwithstanding the general verdict, or the court may return the jury for further consideration of its answers and verdict or may order a new trial."

{¶40} The jury entered a general verdict in favor of Telecom on Lucic's counterclaim for damages for failure to maintain the roof. In interrogatory No. 17, the jury was asked, "If you found that [Lucic] failed to fulfill its obligations under the Lease, was the failure material to the contract such that [Telecom] should be relieved of the obligation to maintain the roof?" All eight jurors answered "No." In interrogatory No. 20, the jury was asked, "Do you find by a preponderance of the evidence that [Lucic's] conduct in altering or maintaining the interior of the premises caused the roof leaks?" All eight jurors answered "No."

{¶41} Lucic contends that these interrogatories are inconsistent with the general verdict because interrogatory No. 17 demonstrates that Telecom was responsible for maintaining the roof and that the roof leaked and in interrogatory No. 20, the jury stated that Lucic did not cause the leaks. Accordingly, Lucic claims "given that there were roof leaks, given that [Lucic] did not cause the roof leaks, and given that [Telecom] was responsible for maintaining the roof, the jury should have concluded that [Telecom's] failure to maintain the roof caused the roof leaks. Thus, the jury should have found that Telecom breached its obligations to maintain the roof."

{¶42} Lucic's conclusions are not supported by the responses given by the jury in its interrogatories. Interrogatory No. 17 establishes that Lucic's failure to fulfill its obligations under the Lease were not sufficient to relieve Telecom of its obligation to maintain the roof. Previously, in interrogatory No. 14, the jury answered that Telecom did not fail to perform its obligation to maintain the roof from June 10, 2010 through July 2013. Accordingly, interrogatory No. 14 essentially rendered the answer to interrogatory No. 17 irrelevant.

{¶43} Lucic's reading of interrogatory No. 20 is also misplaced. This interrogatory did not establish whether or not the roof leaked. The jury's answer indicates that it did not find by a preponderance of the evidence that Lucic's conduct in altering or maintaining the interior of the

premises caused the roof to leak. Lucic asked the jury, trial court, and now this court to presuppose that the roof actually leaked.

{¶44} As the trial court correctly pointed out, none of the answers to the interrogatories following the initial determination that Telecom did not fail to maintain the roof suggest that the jury was confused. Rather, the answers indicate that the jury carefully considered each question and offered answers that are consistent with a determination that Lucic did not meet its burden of proof on the alleged failure to maintain the roof, and that Telecom did not meet its burden of proof on its defense.

{¶45} Moreover, if Lucic believed that the general verdict and interrogatories were inconsistent, Lucic should have objected prior to the jury being discharged. The law is clear that where the inconsistencies between a general verdict and an interrogatory are apparent before the jury is discharged, the inconsistency is waived unless a party raises an objection prior to the jury's discharge. *See Avondet v. Blankstein*, 118 Ohio App.3d 357, 368-369, 692 N.E.2d 1063 (8th Dist.1997).

{¶46} Accordingly, we find the trial court did not abuse its discretion by denying Lucic's motion for a new trial based on an alleged inconsistency between the general verdict and the interrogatories. Lucic's seventh assignment of error is overruled.

### C. Evidentiary Rulings

{¶47} In its fourth and fifth assignments of error, Lucic contends that the trial court erred in its evidentiary rulings. We review evidentiary rulings for an abuse of discretion. *Renfro v. Black*, 52 Ohio St.3d 27, 33, 556 N.E.2d 150 (1990).

### 1. Unrelated Eviction Actions

**{¶48}** During cross-examination of Valentina, Telecom questioned her about 22 tenant evictions she filed on behalf of another company she owns. These evictions were not related to the pending action. Counsel for Lucic objected after Telecom asked the court to take judicial notice of these actions; however, the basis for the objection and the trial court's rulings were conducted off the record. Following the sidebar discussion, the trial court took judicial notice of the cases, and Telecom continued questioning Valentina about the process and procedures in filing an eviction, including her knowledge as to whether filing a counterclaim in an eviction case, allows the tenant to stay in the premises without paying rent during the pendency of the action.

**{¶49}** In its fourth assignment of error, Lucic contends that the trial court abused its discretion to Lucic's substantial detriment when it permitted Telecom to question Valentina on these unrelated evictions. Specifically, Lucic claims that Telecom's purpose in questioning Valentina on these evictions was to cast her as a litigious person, which is improper evidence under Evid.R. 403 and 404(B). Telecom contends, however, that the evidence was relevant to prove that Valentina was familiar with landlord and tenant relationships, specifically how evictions worked.

**{¶50}** Evid.R. 404(B) states that evidence of other "acts is not admissible to prove the character of a person in order to show that [s]he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."

**{¶51}** Lucic cites to *MGM Landscape Contrs., Inc. v. Berry*, 9th Dist. Summit No. 20979, 2002-Ohio-6763, to support its position that the court abused its discretion in allowing Telecom's questioning of Valentina. In *Berry*, MGM Landscape provided landscaping services

to the Berrys and subsequently filed a lawsuit for a money judgment for the services. The Berrys counterclaimed, alleging several causes of action against the company and its president. At trial, the Berrys were questioned about prior legal actions involving other contractors that they had previously hired. The questions involved the Berrys' motivations in filing those prior lawsuits and the results of the actions.

**{¶52}** The Ninth District found this prior litigation evidence irrelevant and highly prejudicial. The court also found that the line of questioning was improper Evid.R. 404(B) other acts evidence that was used to prove the character of the defendants as highly litigious people and that they were merely acting in conformity therewith by bringing suit against this contractor.

**{¶53}** Our review of the record shows that the trial court's decision to allow the questioning was not an abuse of discretion. Unlike in *Berry*, where the evidence in question involved the aggrieved party's unrelated multiple other lawsuits against other individuals and companies, the line of questioning by Telecom in this case did not include specific questions about those eviction cases, Valentina's motivation for filing those cases as a landlord, or the results. The evidence and testimony were not used to prove that Valentina was litigious, but rather to demonstrate her knowledge about the landlord and tenant relationship, the eviction process, and how the court system works, including the procedural consequences of the filing of a counterclaim by a tenant in an eviction proceeding. This was a proper purpose under Evid.R. 404(B). Accordingly, the questioning about Valentina's eviction knowledge was not susceptible of being misconstrued that she was litigious. Lucic's fourth assignment of error is overruled.

### 2. Post-Vacation Roof Condition

**{¶54}** During trial, the jury heard testimony from multiple defense witnesses that each time it rained from 2010 until July 2013, water "poured" from the roof into the Premises.

Telecom's own witness, Franco Bucci, testified that he observed a water leak inside the Premises.

{¶55} During Lucic's case in chief, Doug French, Telecom's property manager, testified as if on cross-examination. On redirect, Telecom asked French when he was last at the Premises. Lucic objected that the question was outside the scope of cross-examination. The trial court overruled the objection, allowing French to respond that he was at the Premises "just that morning," and despite the heavy rain that occurred the night before, there were no leaks inside the Premises. (Tr. 706-707.)

{¶56} In its fifth assignment of error, Lucic contends that the trial court abused its discretion to Lucic's substantial detriment when it allowed irrelevant, highly prejudicial evidence regarding the condition of the roof approximately a year after Lucic vacated the premises.

{¶57} We first note that the objection raised at trial was not that the testimony was irrelevant, but that it was outside the scope of cross-examination. It is a cardinal rule of appellate procedure that a party cannot assert new legal theories for the first time on appeal. *In re Banks*, 4th Dist. Scioto No. 07CA3192, 2008-Ohio-2339, ¶ 7-10. This rule applies to new arguments regarding the admission of evidence that were not made during trial. *See State v. York*, 115 Ohio App.3d 245, 249, 685 N.E.2d 261 (4th Dist.1996) (failure to raise and argue the excited utterance exception at trial waives the issue on appeal). However, this argument was also a basis upon which Lucic moved for a new trial; therefore, this issue will be addressed on appeal.

{¶58} Only relevant evidence is admissible. Evid.R. 402. "Relevant evidence" is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Evid.R. 401.

{¶59} Lucic contends on appeal that this testimony was irrelevant. We agree. The present-day condition of the roof was irrelevant because it did not have any tendency to make the existence of any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence. Evid.R. 401. Because this evidence was irrelevant, it should not have been admitted. Evid.R. 402.

{¶60} However, we disagree with Lucic that the testimony was so highly prejudicial that it carried the risk that the jury could conclude the roof never leaked from June 2010 to July 2013, the relevant time frame for the litigation. Lucic assumes that the jury was incapable of understanding the time frame upon which Lucic's counterclaim for failure to maintain the roof was based. However, jury interrogatory No. 14 clearly set forth that the relevant time frame for Lucic's counterclaim was from June 2010 to July 2013.

{¶61} We find the admission of this testimony was harmless error. Errors relating to the trial court's admission of evidence must be reviewed in light of Evid.R. 103(A) and the standard established in Crim.R. 52(A), providing that such errors are harmless unless the record demonstrates that the errors affected a party's substantial right. Lucic fails to demonstrate how this isolated statement affected a substantial right such that a new trial should be ordered.

{¶62} As recognized by the trial court in denying Lucic's motion for a new trial on this basis, Lucic opened the door to rebuttal testimony when its witnesses testified that "every time it rained," the roof leaked. Once French testified about the present condition of the roof, Lucic could have questioned French about this testimony, clarifying to the jury that his recent observations were well-beyond the time-frame complained about in its counterclaim. Lucic had an opportunity to cure any prejudice but failed to do so.

{¶63} Accordingly, Lucic's fifth assignment of error is overruled.

D.   Manifest Weight of the Evidence

**{¶64}** In its sixth assignment of error, Lucic makes three manifest weight challenges to the jury verdicts in favor of Telecom on (1) Telecom's claim for future rent, (2) Lucic's counterclaim for breach of contract, and (3) Lucic's counterclaim for interference with a business relationship.

**{¶65}** A reviewing court will not reverse a judgment as being against the manifest weight of the evidence when the judgment is supported by some competent, credible evidence going to all the essential elements of the case.  *C.E. Morris Co. v. Foley Constr. Co.*, 54 Ohio St.2d 279, 280, 376 N.E.2d 578 (1978).   We are further guided by the presumption that the trier of fact is best able to view the demeanor of witnesses and use such observations in weighing the credibility of the testimony.  *Seasons Coal Co. v. Cleveland*, 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984).

1.   Telecom's Claim for Future Rent

**{¶66}** At trial, Telecom sought future rent in the amount of $138,722.71.   Lucic raised the affirmative defense that Telecom was not entitled to future rents because it failed to mitigate its damages.   The jury ultimately awarded Telecom future rents in the amount of $56,068.89.

**{¶67}** Lucic contends that due to the overwhelming credible evidence that Telecom failed to take reasonable steps to mitigate its damages, the jury award in favor of Telecom on its claim for future rent was against the manifest weight of the evidence.

**{¶68}** Where a "breaching tenant caused harm such that the lessor's profitability is affected, then that harm is compensable to the extent it is proved." *Frenchtown Square Partnership v. Lemstone, Inc.*, 99 Ohio St.3d 254, 2003-Ohio-3648, 791 N.E.2d 417, ¶ 19. Further, "the damage award should put the injured party in as good a position had the contract

not been breached at the least cost to the defaulting party." *F. Ents., Inc. v. Kentucky Fried Chicken Corp.*, 47 Ohio St.2d 154, 159, 351 N.E.2d 121 (1976). The Supreme Court of Ohio has held "[a] lessor has a duty to mitigate damages caused by a lessee's breach of a commercial lease." *Frenchtown Square* at syllabus. This "duty to mitigate arises in all commercial leases of real property." *Id*. at ¶ 18. A lessor's efforts to mitigate "must be reasonable, and the reasonableness should be determined by the trial court." *Id*. at ¶ 21.

{¶69} The failure to mitigate damages is an affirmative defense. *Young v. Frank's Nursery & Crafts, Inc*., 58 Ohio St.3d 242, 244, 569 N.E.2d 1034 (1991). The burden of proving a failure to mitigate damages lies with the party asserting the defense. *Hines v. Riley*, 129 Ohio App.3d 379, 717 N.E.2d 1133 (4th Dist.1998). "A landlord is not required to use extraordinary efforts to find a new tenant or attempt the unreasonable or impracticable." *Id.* at 383. "Whether a landlord made reasonable efforts to mitigate damages is a question of fact to be resolved by the trier of fact." *Manor Park Apts. v. Garrison*, 11th Dist. Lake No. 2004-L-029, 2005-Ohio-1891, ¶ 16.

{¶70} Lucic contends that Telecom failed to mitigate its damages because it did not post a "For-Rent" sign on the building or advertise the building for rent in the Plain Dealer or other local newspapers, including free online publications. Lucic complains that Telecom's action of advertising the leased premises on the Select Ohio and CoStar's websites, which required a fee to view property listings, was insufficient evidence of mitigation. Furthermore, Lucic asserts that it vacated the premises in July 2013, yet Telecom did not connect with a real estate agent until October 2013.

{¶71} However, Lucic's arguments ignore that Tricarichi hired a real estate agent to assist with re-renting the Premises once Lucic vacated the Premises and it was cleaned. In support,

Tricarichi identified the contract entered into on October 18, 2013, between Telecom and Select Ohio to market the Premises. Tricarichi testified as to the avenues and sources that Select Ohio has used to advertise the Premises, including utilizing mailers to potential clients. Tricarichi also testified that posting "For Rent" signs on the Premises was, in his experience, not an effective outlet for advertising because road access to the building was difficult, and the signage attracts nefarious activity.

{¶72} Accordingly, competent, credible evidence exists to support the jury's determination that Telecom took reasonable steps to mitigate its damages. The trial court's judgment in favor of Telecom on future rents is not against the manifest weight of the evidence on this basis.

### 2. Lucic's Counterclaim for Breach of Contract

{¶73} Lucic contends that due to the overwhelming credible evidence showing that Telecom failed to maintain the roof, the jury award in favor of Telecom on Lucic's counterclaim for breach of contract for failure to maintain the roof was against the manifest weight of the evidence. In support, Lucic directs us to consider the evidence at trial and the inconsistent answers to the jury interrogatory Nos. 14, 17, and 20.

{¶74} Lucic contends that the jury lost its way when it found that Telecom substantially performed its obligation to maintain the roof from June 2010 through July 2013 because evidence was presented that the roof leaked when it rained, causing water to leak inside the Premises. However, Lucic's witnesses could not opine as to the cause of the leaks.

{¶75} The jury also heard evidence that Lucic made alterations to the roof area — including adding an air conditioning unit and a roof vent for the kitchen that could have caused the leaks and were not Telecom's responsibility to maintain. Lucic's argument on appeal

assumes that if the roof leaked, it was due to the failure on the part of Telecom to adequately maintain the roof. Tricarichi and French each testified, however, about the efforts they took to maintain the roof, including routine inspections of the new roof installed prior to the time-frame of the lawsuit.

{¶76} Therefore, competent and credible evidence existed supporting the jury's verdict. The jury was in the best position to consider competing evidence and weigh it accordingly.

{¶77} Furthermore, as previously addressed under Lucic's seventh assignment of error regarding inconsistent verdicts, the jury interrogatories were not inconsistent with the jury award. Therefore, we find that the jury award in favor of Telecom on Lucic's counterclaim for breach of contract was not against the manifest weight of the evidence.

### 3. Lucic's Counterclaim for Interference with Business Relationship

{¶78} Lucic contends that due to the overwhelming credible evidence showing that Tricarichi interfered with its business relationship with its African-American customers, the jury award in favor of Telecom on Lucic's claim for interference with business relationships was against the manifest weight of the evidence. Specifically, Lucic contends that the jury's answers to interrogatory Nos. 24, 25, and 27 were against the manifest weight of the evidence.

{¶79} The jury answered in the negative when it was asked whether it found by the preponderance of the evidence that the (1) plaintiff used racial slurs to interfere with defendant's existing or prospective business relationship with customers; (2) plaintiff intended, through its use of racial slurs, to interfere with defendant's existing or prospective business relationship with customers; and (3) plaintiff's conduct proximately caused damage to defendant's business. *See* interrogatory Nos. 24, 25, and 27.

**{¶80}** However, a review of the jury's answers does not necessarily mean that plaintiff did not use racial slurs, but that the use of the slurs, if any, did not interfere with Lucic's business relationships. The answers could also be interpreted to mean that Lucic failed to satisfy its burden that Tricarichi's conduct interfered with Lucic's business relationships. Lucic could have asked specific questions to pinpoint what the jury did or did not find, but it failed to do so. We will not speculate the basis upon which the jurors answered the interrogatories.

**{¶81}** Again, in weighing the evidence, we are guided by a presumption that the findings of the trier of fact are correct. *Seasons Coal*, 10 Ohio St.3d at 80, 461 N.E.2d 1273. This presumption arises because the trier of fact had an opportunity "to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony." *Id*.

**{¶82}** Lucic contends that it offered the greater amount of credible evidence to show that Tricarichi used racial slurs against its customers and it was damaged as a result. Lucic provided testimony from various witnesses that they heard Tricarichi use racial slurs in front of Lucic's customers and to describe Lucic's customers. These individuals also testified that they witnessed some customers leave the area. However, the jury also heard testimony from other witnesses who testified that they never heard Tricarichi make any racially insensitive remarks. From the record, it appears that judging the credibility of the witnesses was a key role for the jury, and the jury was within its purview to believe or disbelieve any or all of a witness's testimony. Thus, "to the extent that the evidence is susceptible to more than one interpretation," a reviewing court will "construe it consistently with the jury's verdict." *Berry v. Lupica*, 196 Ohio App.3d 687, 2011-Ohio-5381, 965 N.E.2d 318, ¶ 22 (8th Dist.), citing *Ross v. Ross*, 64 Ohio St.2d 203, 414 N.E.2d 426 (1980).

**{¶83}** Based on our review of the testimony and record, we find that the jury did not lose its way in finding in favor of Telecom on Lucic's counterclaim for interference with business relationship.

**{¶84}** Lucic's sixth assignment of error is overruled.

## II. Telecom Cross-Appeal

**{¶85}** In it's cross-appeal, Telecom contends as its sole assignment of error that the trial court erred in failing to grant summary judgment in toto against Lucic on its failure to pay rent claim.

**{¶86}** An appellate court reviews a trial court's decision on a motion for summary judgment de novo. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105, 671 N.E.2d 241 (1996). Summary judgment is appropriate when, construing the evidence most strongly in favor of the nonmoving party, (1) there is no genuine issue of material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can only reach a conclusion that is adverse to the nonmoving party. *Zivich v. Mentor Soccer Club, Inc.*, 82 Ohio St.3d 367, 369-370, 696 N.E.2d 201 (1998).

**{¶87}** The party moving for summary judgment bears the burden of demonstrating that no material issues of fact exist for trial. *Dresher v. Burt*, 75 Ohio St.3d 280, 292-293, 662 N.E.2d 264 (1996). The moving party bears the initial responsibility of informing the trial court of the basis for the motion, and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact on the essential elements of the nonmoving party's claims. *Id*. After the moving party has satisfied this initial burden, the nonmoving party has a reciprocal duty to set forth specific facts by the means listed in Civ.R. 56(C) showing that there is a genuine

issue of material fact. *Id*. If the party does not respond, summary judgment, if appropriate, shall be entered against the party. Civ.R. 56(C).

{¶88} In this case, certain facts are undisputed by the parties. Lucic's monthly rent obligation was $8,860.96. The Lease was to expire in August 2014. Lucic vacated the premises on July 23, 2013. The last rent payment made by Lucic was for the month of April 2013. Based on these undisputed facts, the trial court entered partial summary judgment in the amount of $27,023 in favor of Telecom for unpaid rent from May 2013 until July 2013. This amount included the 5 percent late fee assessed for May's rent. This amount was not appealed by either party. The sole issue on appeal is whether a genuine issue of material fact existed regarding mitigation.

{¶89} In its motion for summary judgment, Telecom argued that it listed the Premises for rent in October 2013, after cleaning out the premises. In support of this statement, Telecom attached the affidavit of Tricarichi, the owner of Telecom. Tricarichi stated in his affidavit

15. [Telecom] has listed the Premises for rent since it cleaned the Premises out in October, 2013.

16. As of the date of this Affidavit [February 12, 2014], the Premises has not been re-rented.

Accordingly, Telecom argued that summary judgment was proper in the amount of $170,190.57, which included past due rents, late charges, and future rents.

{¶90} In response, Lucic contended that it was not obligated to pay the rent owed because Telecom did not mitigate its damages. In support, Lucic attached the affidavit of Valentina, Lucic's owner, stating that:

25. Since Lucic left the Leased Premises, Defendant did not put a for-rent sign on the building or otherwise advertise the Premises for rent. Attached as Exhibits

DD and V are true and accurate copies of a Video and pictures showing the exterior of the building.

**{¶91}** On appeal, Telecom argues that the affidavit of Valentina is merely a self-serving affidavit of facts not within her personal knowledge and thus cannot be sufficient to defeat its motion for summary judgment.   We disagree.

**{¶92}** An otherwise competent affidavit is not invalid for the sole reason that it is executed by a party and submitted to aver facts in opposition to summary judgment.   To the contrary, a party's affidavit is competent to create a genuine issue of material fact if made on personal knowledge.   *Wolf v. Big Lots Stores, Inc.*, 10th Dist. Franklin No. 07AP-511, 2008-Ohio-1837, ¶ 12.   However,

> [a] party's unsupported and self-serving assertions offered to demonstrate issues of fact, standing alone and without corroborating materials contemplated by Civ.R. 56, are simply insufficient [to overcome a properly supported motion for summary judgment].   In other words, when the moving party puts forth evidence tending to show that there are no genuine issues of material fact, the nonmoving party may not avoid summary judgment solely by submitting a self-serving affidavit containing no more than bald contradictions of the evidence offered by the moving party.   To conclude otherwise would enable the nonmoving party to avoid summary judgment in every case, crippling the use of Civ.R. 56 as a means to facilitate the early assessment of the merits of claims, pre-trial dismissal of meritless claims, and defining and narrowing issues for trial

(Citations omitted.)   *Bank One, N.A. v. Burkey*, 9th Dist. Lorain No. 99 CA007359, 2000 Ohio App. LEXIS 2517,*15 (June 14, 2000).

**{¶93}** In summary judgment proceedings, a court may not weigh the evidence or judge the credibility of sworn statements, properly filed in support of or in opposition to a summary judgment motion, and must construe the evidence in favor of the nonmoving party.   *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).   "[W]hen reviewing a motion for summary judgment, a court must be careful not to weigh the

evidence or judge the credibility of witnesses. * * * Instead, it must consider all of the evidence and reasonable inferences that can be drawn from the evidentiary materials in favor of the nonmoving party." *Wheeler v. Johnson*, 2d Dist. Montgomery No. 22178, 2008-Ohio-2599, ¶ 28. When trial courts choose between competing affidavits and testimony, they improperly determine credibility and weigh evidence contrary to summary judgment standards. *Finn v. Nationwide Agribusiness Ins. Co.*, 3d Dist. Allen No. 1-02-80, 2003-Ohio-4233, ¶ 39.

{¶94} Accordingly, because the trial court was presented with two competing affidavits, it could not determine the issue of mitigation. Therefore, a genuine issue of material fact existed to defeat, in its entirety, Telecom's motion for summary judgment on its failure to pay rent claim. The trial court did not err in denying in Telecom's motion in part. Telecom's assignment of error is overruled.

{¶95} Judgment affirmed.

It is ordered that the parties share equally the costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


KATHLEEN ANN KEOUGH, PRESIDING JUDGE

TIM McCORMACK, J., and
SEAN C. GALLAGHER, J., CONCUR