[Cite as *Nouraldin v. Swipe USA, L.L.C.*, 2026-Ohio-1649.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

HAZEM NOURALDIN, MD,                    :

      Plaintiff-Appellant,            :

                             No. 115408

      v.                              :

SWIPE USA, LLC, ET AL.,                 :

      Defendants-Appellees.           :

---

### JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED IN PART; REVERSED IN PART;
                 AND REMANDED
**RELEASED AND JOURNALIZED:** May 7, 2026

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Case No. CV-24-101513

---

### *Appearances:*

Myers Law, LLC and Daniel J. Myers, *for appellant*.

Nicola, Gudbranson & Cooper, LLC, John D. Sayre, and
Luke F. McConville, *for appellees*.

EILEEN T. GALLAGHER, J.:

{¶ 1} Appellant Hazem Nouraldin, MD ("Nouraldin") appeals the judgment of the trial court granting summary judgment in favor of appellees Steve Kish ("Kish"), Swipe USA, LLC ("Swipe"), and Lake Forest Development, LLC ("Lake Forest") (collectively, "appellees"). He raises two assignments of error:

1. The trial court committed reversible error when it granted summary judgment in favor of appellees when it improperly weighed the credibility and evidence, when it interpreted the evidence against Dr. Nouraldin, when it misinterpreted and misread the evidence before it, when it ignored evidence in the record, and when it interpreted the breach of the partnership agreement as continued negotiations.

2. The trial court committed reversible error when it converted Lake Forest Development, LLC's improper motion for judgment on the pleadings to a motion for summary judgment instead of simply denying the same.

{¶ 2} After a thorough review of the applicable law and facts, we find that Nouraldin waived any error associated with the conversion of the motion for judgment on the pleadings to a motion for summary judgment and that genuine issues of material fact remain as to Nouraldin's claims for breach of contract and promissory estoppel.

{¶ 3} We affirm the trial court's grant of summary judgment on Nouraldin's claim of breach-of-fiduciary duties and claim for declaratory judgment. We reverse the trial court's grant of summary judgment on the claims for breach of contract and promissory estoppel, and this matter is remanded for further proceedings.

## I. Factual and Procedural History

{¶ 4} In 2023, Nouraldin was interested in purchasing a certain parcel of property in Westlake, Ohio ("Property"). Kish, through his company, Swipe, was also interested in purchasing the Property. Nouraldin had engaged the same realtor as Swipe, John Chandler ("Chandler"), who approached Nouraldin about partnering with Swipe on the purchase, development, and future sale of the Property. According to Nouraldin, he and appellees reached an oral partnership agreement

whereby Nouraldin would contribute 75 percent of the costs and expenses for the purchase and development of the land and receive 75 percent of the proceeds received from any sale of residential lots. Swipe agreed to provide 25 percent of the costs and expenses and receive 25 percent of the proceeds.

{¶ 5} Nouraldin alleged that the terms of the partnership, as set forth above, were formalized and agreed to in writing via a Letter of Understanding ("LOU"). The LOU stated as follows:

> The parties, Swipe USA LLC and Hazem Nouraldin, to this Letter of Understanding as acknowledged below, agree that they have a mutual binding agreement between them as to a partnership arrangement should one of the parties' offer to purchase 2 parcels of Land comprising Phase V of the Lake Forest Subdivision in Westlake, Ohio be accepted by the seller.

The LOU was acknowledged and signed by Nouraldin and Kish, on behalf of Swipe.

{¶ 6} Nouraldin stated that he and Swipe each submitted an offer to purchase the Property. Kish texted Nouraldin to tell him not to submit a new offer against his offer so they did not bid against each other. Nouraldin then withdrew his offer, and Swipe's offer was accepted by the seller. Kish informed Nouraldin that he needed a "proof of funds" letter to show the seller. Nouraldin provided Swipe with the letter, and Swipe submitted the same as proof of funds for the purchase.

{¶ 7} Swipe's offer was accepted, and the purchase was completed. Nouraldin asserts that Swipe then refused to enter into the partnership agreement as memorialized in the LOU and intentionally excluded Nouraldin from the purchase, development, sale, and revenue of the Property.

{¶ 8} Before appellees transferred any interests in the Property, Nouraldin filed an affidavit of facts with the Cuyahoga County Recorder, outlining the claimed partnership and his interest in the Property. Nouraldin stated in the affidavit that he entered into an LOU with Swipe "whereby Swipe and [he] were to enter into a partnership agreement" if one of their offers to purchase the Property was accepted. (Complaint, exhibit No. 2, ¶ 3.) He further averred that "Swipe has breached the [LOU] by failing and refusing to enter into the partnership agreement with [him] pursuant to the [LOU]." *Id.* at ¶ 6. Nouraldin further stated that he "claim[ed] an interest in the Property by virtue of the [LOU] and the partnership agreement between Swipe and [him]." *Id.* at ¶ 8.

{¶ 9} Nouraldin filed suit against Swipe, Kish, and Lake Forest alleging claims of breach of contract, promissory estoppel, and breach-of-fiduciary duties.[1] He also sought a judgment declaring that (1) a partnership agreement existed between Nouraldin and one or more defendants; (2) the terms of the partnership were as expressed by Nouraldin; (3) the partnership became effective as soon as one or more of the defendants' offers to purchase the Property was accepted by the seller; (4) one or more defendants have breached the partnership agreement; (5) the Property and/or Lake Forest were partnership assets; and (6) Swipe/Kish have committed violations of their fiduciary duties and other duties such that they may be expelled under R.C. 1776.01, et seq., from the partnership by a vote of the other

---

[1] Lake Forest is the successor-in-interest to Swipe. There were two other defendants named in the suit, but they were voluntarily dismissed from the action and are not parties to this appeal.

member, i.e., Nouraldin. In addition, Nouraldin sought a declaratory judgment regarding "any other issues raised previously on which there is a dispute."[2] Attached to the complaint was the LOU and Nouraldin's affidavit of facts.

{¶ 10} Swipe and Kish each filed a motion to dismiss the complaint under Civ.R. 12(B)(6). Swipe argued in its motion that Nouraldin had failed to demonstrate the existence of a contract and that his allegations did not reflect sufficient definite terms or any intent for the parties to be bound. Swipe maintained that the LOU only stated that the parties agreed to a "partnership arrangement." In addition, Swipe asserted that Nouraldin's complaint failed to demonstrate how he was damaged since he did not expend any funds.

{¶ 11} In Kish's motion, he argued that the claims against him should be dismissed because he should not have been named individually. Even assuming arguendo that a contract existed between Nouraldin and Swipe, Kish maintained that he could not be personally liable for any claimed breach. He further asserted that he owed no duty to Nouraldin and therefore could not have breached any fiduciary duty.

{¶ 12} Because it had already answered the complaint, Lake Forest filed a motion for judgment on the pleadings. In its motion, it argued that Nouraldin's complaint did not set forth sufficient facts to demonstrate that an enforceable contract existed between Lake Forest and Nouraldin. Lake Forest argued that it was

---

[2] Nouraldin also sought certain declarations that are not relevant to the case concerning the two dismissed defendants.

not even formed as an entity until March 2023, which is *after* the time Nouraldin asserts that the parties agreed to form a partnership. Regardless, Nouraldin chose not to work with Lake Forest.

{¶ 13} The trial court determined that it was appropriate to convert the above motions into motions for summary judgment, noting that the complaint referenced other writings related to the formation of a partnership that were outside of the pleadings. The court granted the parties additional time to supplement their motions with summary-judgment materials.

{¶ 14} Appellees filed a joint supplemental brief in support of their motions. Attached to their brief was the affidavit of Chandler, verifying that the documents attached thereto were business records, and the affidavit of counsel for appellees, who attested to the authenticity of attached emails and texts that had been produced by Nouraldin in response to discovery requests. While acknowledging that the parties did discuss a business arrangement, appellees maintained in their brief that the submitted documents confirm that a partnership did not exist between themselves and Nouraldin. Appellees argued that the LOU was only an agreement to agree in the future; while the LOU stated that there was a "binding" agreement, the terms of any such agreement were still entirely vague.

{¶ 15} In his supplemental brief in opposition to the motions for summary judgment, Nouraldin argued that there is an issue of fact regarding whether the parties entered into an express oral partnership agreement and/or whether an implied partnership agreement was demonstrated by the conduct of the parties and

reliance by Nouraldin. In support of his brief, Nouraldin presented his own affidavit, the LOU, the proof-of-funds letter signed by Kish on behalf of Swipe, and Chandler's affidavit.

{¶ 16} In their supplemental reply brief to the motions for summary judgment, appellees argued that there was no "objective evidence" that as of the date of the LOU, the parties had agreed to a 75 percent/25 percent partnership. In support of their reply, appellees cited correspondence from Nouraldin to Kish after Swipe's offer had been accepted that discussed Nouraldin's desire to set up legal documents for "the two LLC[s]." Nouraldin also mentioned the need to "finalize the operating agreement before [they] fund any money." Appellees argued that Nouraldin's proposal to form an LLC was evidence against Nouraldin's assertion that a partnership already existed.

{¶ 17} The trial court granted summary judgment in favor of appellees, finding that there was "a dearth of objective evidentiary support for the idea that [the] parties reached any sort of meeting of the minds such that any contractual and fiduciary obligations were created."

{¶ 18} Nouraldin then filed the instant appeal.

## II. Law and Analysis

{¶ 19} For ease of discussion, we will consider the assignments of error out of order.

## A. Conversion of Motion

{¶ 20} In his second assignment of error, Nouraldin argues that the trial court improperly converted Lake Forest's motion for judgment on the pleadings into a motion for summary judgment. Nouraldin contends that there is no provision in the Ohio Rules of Civil Procedure that would permit a motion brought pursuant to Civ.R. 12(C) to be converted into a motion for summary judgment under Civ.R. 56.

{¶ 21} Preliminarily, we note that in the court's journal entry converting appellees' motions into motions for summary judgment, the court only refers to motions to dismiss filed by the parties. Civ.R. 12(B) provides for conversion to a motion for summary judgment where a party has filed a motion pursuant to Civ.R. 12(B)(6), asserting that the plaintiff has failed to state a claim upon which relief can be granted, and matters are presented outside the pleading and not excluded by the court. In such a case, "the court shall consider only such matters outside the pleadings as are specifically enumerated in Rule 56. All parties shall be given reasonable opportunity to present all materials made pertinent to such a motion by Rule 56." Civ.R. 12(B).

{¶ 22} Because Lake Forest's motion was named in the journal entry, we will assume that, even though the court only referenced pending motions *to dismiss*, the trial court also meant the motion for judgment on the pleadings.

{¶ 23} Nouraldin is correct that motions filed pursuant to Civ.R. 12(C) cannot be converted into motions for summary judgment. "'The language of Civ.R. 12(C) does not provide for conversion.'" *Hersh v. Grumer*, 2021-Ohio-2582,

¶ 14 (8th Dist.), quoting *Piersant v. Bryngelson*, 61 Ohio App.3d 359, 363 (8th Dist. 1989).

{¶ 24} Nevertheless, Nouraldin did not bring this error in procedure to the attention of the trial court. The trial court in this case expressly converted appellees' motions into motions for summary judgment; the parties were advised of this conversion by way of journal entry. The parties were granted sufficient time to supplement their filings and submit Civ.R. 56 evidentiary material. Nouraldin did not object to the court's desired procedure; rather, once the trial court converted the motion for judgment on the pleadings to a motion for summary judgment, Nouraldin responded accordingly, and submitted materials relevant to a motion for summary judgment. Having failed to raise this irregularity in the trial court, we deem it to be waived.

{¶ 25} Regardless, since proper notice was given to the parties of the intention to convert the motion and the parties were permitted to prepare for a summary judgment exercise, the error is harmless under Civ.R. 61. This rule provides, "The court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties." Here, Nouraldin was given notice of the court's decision to convert the motions; he was also given a fair and reasonable opportunity to respond to the converted motions. We can find no violations of Nouraldin's substantial rights, and therefore any error in converting the motions was harmless as a matter of law. Nouraldin's second assignment of error is overruled.

## B. Summary Judgment

{¶ 26} In his first assignment of error, Nouraldin argues that the trial court erred in granting summary judgment because it (1) erroneously interpreted the evidence, (2) ignored evidence of an oral agreement, (3) weighed the evidence against him, (4) disbelieved affidavit testimony, (5) ignored his arguments regarding the LOU, and (6) incorrectly interpreted and applied the Revised Uniform Partnership Act by finding that the statute requires an express agreement.

{¶ 27} We review an appeal from summary judgment under a de novo standard of review. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105 (1996); *Zemcik v. LaPine Truck Sales & Equip. Co.*, 124 Ohio App.3d 581, 585 (8th Dist. 1997). Pursuant to Civ.R. 56, summary judgment is appropriate when (1) there is no genuine issue of material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can come to but one conclusion and that conclusion is adverse to the nonmoving party, said party being entitled to have the evidence construed most strongly in his favor. *Horton v. Harwick Chem. Corp.*, 73 Ohio St.3d 679 (1995), paragraph three of the syllabus. The party moving for summary judgment bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Dresher v. Burt,* 75 Ohio St.3d 280, 292-293 (1996).

{¶ 28} Once the moving party satisfies its burden, the nonmoving party "may not rest upon the mere allegations or denials of the party's pleadings, but the party's response, by affidavit or as otherwise provided in this rule, must set forth specific

facts showing that there is a genuine issue for trial." Civ.R. 56(E); *Mootispaw v. Eckstein*, 76 Ohio St.3d 383, 385 (1996). Doubts must be resolved in favor of the nonmoving party. *Murphy v. Reynoldsburg*, 65 Ohio St.3d 356, 358-359 (1992).

{¶ 29} "In summary judgment proceedings, a court may not weigh the evidence or judge the credibility of sworn statements, properly filed in support of or in opposition to a summary judgment motion, and must construe the evidence in favor of the nonmoving party." *Telecom Acquisition Corp. I, Inc. v. Lucic Ents., Inc.*, 2016-Ohio-1466, ¶ 93 (8th Dist.), citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). "When trial courts choose between competing affidavits and testimony, they improperly determine credibility and weigh evidence contrary to summary judgment standards." *Id.,* citing *Finn v. Nationwide Agribusiness Ins. Co.,* 2003-Ohio-4233, ¶ 3 (3d Dist.).

### 1. Breach-of-Contract Claim

{¶ 30} A breach of contract is established when a party shows (1) the existence of a contract, (2) that the nonbreaching party performed on the contract, (3) that the breaching party failed to perform its contractual obligations without legal excuse, and (4) the nonbreaching party suffered damages flowing from the breach. *Holliday v. Calanni Ents.*, 2021-Ohio-2266, ¶ 20 (8th Dist.), citing *Doner v. Snapp*, 98 Ohio App.3d 597, 600 (2d Dist. 1994).

{¶ 31} Here, the parties disagree as to whether a contract existed at all. "Contract formation requires an offer, acceptance, consideration, and mutual assent between two or more parties with the legal capacity to act." *Widok v. Estate of Wolf*,

2020-Ohio-5178, ¶ 52 (8th Dist.), citing *Kostelnik v. Helper*, 2002-Ohio-2985, ¶ 16. For a contract to be enforceable, there must be a meeting of the minds as to the essential terms of the agreement, i.e., the essential terms of the agreement must be reasonably certain and clear and mutually understood by the parties. *Kostelnik* at ¶ 16-17, citing *Rulli v. Fan Co.,* 79 Ohio St.3d 374, 376 (1997); *Episcopal Retirement Homes v. Ohio Dept. of Indus. Relations*, 61 Ohio St.3d 366, 369 (1991).

{¶ 32} "'Meeting of the minds' refers to the manifestation of mutual assent by the parties of an agreement to the exchange and consideration, or to the offer and acceptance." *Tiffe v. Groenenstein*, 2003-Ohio-1335, ¶ 25 (8th Dist.), citing 1 Restatement of the Law 2d, Contracts, § 17, Comment c (1981). To have a meeting of the minds, "'there must be a definite offer on one side and an acceptance on the other.'" *Turoczy Bonding Co. v. Mitchell*, 2018-Ohio-3173, ¶ 18 (8th Dist.), quoting *Garrison v. Daytonian Hotel*, 105 Ohio App.3d 322, 325 (2d Dist. 1995). Furthermore, "[t]he relevant inquiry is the manifestation of intent of the parties as seen through the eyes of a reasonable observer, rather than the subjective intention of the parties." *Bennett v. Heidinger*, 30 Ohio App.3d 267, 268 (8th Dist. 1986), citing 1 Corbin, *Contracts*, § 9 (1963); Restatement of the Law 2d, Contracts, § 1 and 3 (1981).

{¶ 33} The claimed contract in the instant matter is an oral partnership agreement; Nouraldin maintains that the LOU is not the contract but is a memorialization of the oral partnership agreement entered into by the parties.

{¶ 34} The terms of an oral contract may be determined from "'words, deeds, acts, and silence of the parties.'" *Kostelnik*, 2002-Ohio-2985 at ¶ 15, quoting *Rutledge v. Hoffman*, 81 Ohio App. 85 (12th Dist. 1947). "'Complete clarity in every term of the agreement is unnecessary because all agreements have some degree of indefiniteness and uncertainty.'" *Depompei v. Santabarbara*, 2015-Ohio-18, ¶ 22 (8th Dist.), quoting *Advantage Renovations, Inc. v. Maui Sands Resort, Co., L.L.C.*, 2012-Ohio-1866, ¶ 18 (6th Dist.), citing *Kostelnik* at ¶ 17; *Rutledge* at 86 ("[S]eldom, if ever, does the evidence in proof of an oral contract present its terms in the exact words of offer and acceptance found in formal written contracts. And no such precision is required."). "[T]he goal in enforcing oral contracts is to hold people to the promises they make." *Depompei* at ¶ 22, citing *Kostelnik* at ¶ 19, citing 1 Corbin, *Contracts*, § 4.1, 530 (Perillo Rev.Ed. 1993).

{¶ 35} In support of his assertion that an oral partnership agreement was formed between the parties, Nouraldin relies upon his own affidavit, the LOU, the proof-of-funds letter, and the affidavit of Chandler. Nouraldin's affidavit states, in pertinent part:

> 4. Steve Kish and I agreed that I, on behalf of myself and two other persons, would contribute 75% of the cost toward the procurement, development, and sale of the Lake Forest Development property and Steve Kish would contribute 25%. Our interests in the profit of the sale would be the same ratios.
>
> 5. Steve Kish agreed with these terms, and we executed a letter of understanding to put in writing the fact that we reached an agreement as to a partnership to purchase, develop, and sell the property. We agreed to these terms if either Kish's offer through Swipe USA, LLC was successful, or my offer was successful.

(Nouraldin's brief in opposition to [appellees'] supplemental motion for summary judgment, exhibit No. 1, ¶ 4-5.)

{¶ 36} Nouraldin also presented Chandler's affidavit, the proof-of-funds letter that was signed by Kish, and excerpts from Kish's deposition. The proof-of-funds letter stated:

> Attached are three statements from E Trade, Fifth Third and Vanguard showing as of 12/31/2022, funds on deposit exceeding $4,227,300. These funds will be utilized for the purchase of the Lake Forest Property. The Account holder is Premier Wisdom Enterprises LLC, my funding partner in this purchase.

(Nouraldin's brief in opposition to [appellees'] supplemental motion for summary judgment, exhibit No. 2.)[3]

{¶ 37} In his affidavit, Chandler acknowledged that he worked as a realtor with both Nouraldin and Kish with regard to the purchase of the Property. He stated that Kish and Nouraldin had a conversation prior to offers being submitted for the Property. He further averred:

> 3. Myself, Mr. Kish, and Dr. Nouraldin as well as one or more of Dr. Nouraldin's associates was on the phone for a conversation, during which Mr. Kish and Dr. Nouraldin spoke of a mutual friend or acquaintance, and then both Mr. Kish and Dr. Nouraldin stated that if one or the other was successful in getting the property, that the other still wanted to stay in the deal. They talked about how they would do that, with Dr. Nouraldin stating that since he had three people total, (himself and two associates), and Mr. Kish was on his own, that they could divide things up 75% for Dr. Nouraldin and his associates and 25% for Mr. Kish.
>
> 4. Mr. Kish stated he was open to that.

---

[3] There is little information about Premier Wisdom Enterprises, L.L.C., but it is alleged to be a company owned by Nouraldin.

5. The next day, I received a call from Dr. Nouraldin stating that he and Mr. Kish had further conversations about working together, and that they would like to move forward with a Letter of Understanding to memorialize that they had reached an agreement.

6. Dr. Nouraldin provided the wording, and it was typed up and sent to Mr. Kish. Mr. Kish called and said he was ok with it, and both Mr. Kish and Dr. Nouraldin then signed the Letter of Understanding that I previously provided in response to a subpoena. The agreement was an understanding as to a partnership arrangement if either Dr. Nouraldin, or Mr. Kish's company's offer, made by Swipe USA, was accepted by the seller of the Lake Forest Development in Westlake.

7. I felt based on that, and the conversation that they had previously, that Dr. Nouraldin and Mr. Kish had reached a mutual understanding.

8. Ultimately, Mr. Kish's company's offer was accepted.

9. After Mr. Kish's company, Swipe USA, had its offer accepted, and a condition of the offer was that he had to provide proof of funds within a certain number of days after acceptance.

10. I called Mr. Kish and informed him that we needed to submit his proof of funds.

11. I received a call from Mr. Kish stating that he talked to Dr. Nouraldin, and that Mr. Kish's own proof of funds should not be used, but instead, the Dr. Nouraldin proof of funds should be used.

12. Mr. Kish gave me the language for the proof of funds letter, which I typed for him. Dr. Nouraldin accepted it and Mr. Kish signed it. In that letter, Mr. Kish used the word funding "partner" to refer to Dr. Nouraldin or Dr. Nouraldin's fund-holding companies.

13. Later, after acceptance of the offer by the seller, the execution of the letter of understanding, and the execution and sharing of the proof of funds letter with the seller, Mr. Kish stated that he was concerned about Dr. Nouraldin's position for making management decisions being made more on a 50-50 basis and when a decision ended up 50-50[,] Dr. Nouraldin said it would go to arbitration and Mr. Kish would not accept that arrangement.

(Chandler affidavit, ¶ 3-13.)

{¶ 38} Nouraldin argues that the parties had an oral agreement for a 75 percent/25 percent partnership. He contends that the partnership took effect once Swipe's offer for the Property was accepted. R.C. 1776.01(M) defines a partnership as "an association of two or more persons to carry on as co-owners a business for-profit formed under section 1776.22 of the Revised Code, a predecessor law, or a comparable law of another jurisdiction." "A partnership exists where there is: (1) an express or implied partnership contract between the parties; (2) the sharing of profits and losses; (3) mutuality of agency; (4) mutuality of control; and (5) co-ownership of the business and of the property used for partnership purposes or acquired with partnership funds." *Promotional Advertising, Inc. v. CS Creative Promotions, L.L.C.*, 2025-Ohio-2022, ¶ 49 (5th Dist.), citing *Westbrook v. Swiatek*, 2011-Ohio-781 (5th Dist.).

{¶ 39} Where there is no written partnership agreement, "an implied partnership can be found from the totality of the attendant facts and circumstances." *Id.*, citing *id.* "[O]bjective indicators of an implied partnership agreement may include the existence of a written or oral partnership agreement, joint ownership and control of property, the ability of members to bind the business entity, and the nature of the tax returns filed by the business entity." *Id.*, citing *Thermodyn Corp. v. 3M Co.*, 593. F.Supp.2d 972 (N.D. Ohio 2008). Because every business relationship is unique, there is no single fact or circumstance that can operate as a conclusive test to determine the existence of a partnership. *In re Estate of Ivanchak*, 2006-Ohio-5175, ¶ 21 (11th Dist.).

{¶ 40} Kish denied that the parties formed a partnership; in fact, he maintained that they actually contemplated forming a limited liability company. He stated in his deposition that he had never met Nouraldin but that he had talked about him with Chandler. He admitted speaking on the phone with Nouraldin a few times and said they had exchanged some text messages.[4] (Kish deposition, p. 9-10.)

{¶ 41} It is apparent from the record that the parties had discussed and taken steps toward a business arrangement regarding the purchase of the Property. Nouraldin and Kish both acknowledge that they discussed not competing against each other in bidding on the Property. (Nouraldin affidavit, ¶ 7; Kish deposition, p. 96-98.) Further, while it was appellees' offer that was accepted for the Property, appellees utilized Nouraldin's proof of funds. Chandler's affidavit supports Nouraldin's argument that the parties had an agreement to work together. Finally, Kish essentially acknowledged that a partnership existed when he stated in his deposition that "the partnership was over with" at some point. (Kish deposition, p. 102.)

{¶ 42} This court has noted:

"In summary judgment proceedings, a court may not weigh the evidence or judge the credibility of sworn statements, properly filed in support of or in opposition to a summary judgment motion, and must construe the evidence in favor of the nonmoving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). * * * When trial courts choose between competing affidavits and testimony, they improperly determine credibility and

_____

4 We note that, in his motion to dismiss, Kish argued that he should not have been named in the action personally. However, in their joint supplemental brief, appellees did not address this assertion or provide any Civ.R. 56 materials that would support Kish's argument.

weigh evidence contrary to summary judgment standards. *Finn v. Nationwide Agribusiness Ins. Co.*, 3d Dist. Allen No. 1-02-80, 2003-Ohio-4233, ¶ 39."

*Widok,* 2020-Ohio-5178, at ¶ 59 (8th Dist.), quoting *Telecom,* 2016-Ohio-1466, at ¶ 93 (8th Dist.).

{¶ 43} The Ohio Supreme Court has further recognized:

Credibility issues typically arise in summary judgment proceedings when one litigant's statement conflicts with another litigant's statement over a fact to be proved. Since resolution of the factual dispute will depend, at least in part, upon the credibility of the parties or their witnesses, summary judgment in such a case is inappropriate.

*Turner v. Turner*, 67 Ohio St.3d 337, 341 (1993).

{¶ 44} Without assessing the credibility of Nouraldin's claim or appellees' denials, and construing the evidence in a light most favorable to Nouraldin, we find that genuine issues of material fact exist as to the whether the parties entered into an enforceable partnership agreement. The trial court therefore erred in granting summary judgment on Nouraldin's breach-of-contract claim.

## 2. Promissory-Estoppel Claim

{¶ 45} Nouraldin further asserts that a partnership by estoppel existed. In support of this, he points to appellees' words where they referred to Nouraldin as a partner and executed the LOU stating that there was a partnership arrangement, along with their conduct in using Nouraldin's proof of funds for their offer and telling him that they were partners.

{¶ 46} Appellees argued in their supplemental brief that Nouraldin could not assert a promissory-estoppel claim when he also asserted that a valid contract

existed. Generally, it is true that "the existence of an enforceable express contract between the parties bars recovery under a promissory estoppel claim." *12100 Buckeye Ltd. v. Council for Economic Opportunities in Greater Cleveland*, 2021-Ohio-4517, ¶ 29 (8th Dist.), citing *Americana Invest. Co. v. Natl. Contracting & Fixturing, L.L.C.*, 2016-Ohio-7067, ¶ 13 (10th Dist.). However, a plaintiff may present alternative theories of recovery, but it is only entitled to a single recovery of damages. *Depompei,* 2015-Ohio-18, at ¶ 48 (8th Dist.), citing *Brenner Marine, Inc. v. George J. Goudreau, Jr. Trust*, 1995 Ohio App. LEXIS 62 (6th Dist. Jan. 13, 1995) (plaintiff entitled to only single recovery of damages even though such plaintiff may plead alternative theories of recovery); *Homes v. Sullivan*, 1997 Ohio App. LEXIS 5884, *8 (5th Dist. Dec. 18, 1997) (Permitting a double recovery on mutually exclusive theories of recovery would be plain error. ).

{¶ 47} "The elements of a claim for promissory estoppel are as follows: (1) a clear, unambiguous promise, (2) reliance upon the promise by the person to whom the promise is made, (3) the reliance is reasonable and foreseeable, and (4) the person claiming reliance is injured as a result of reliance on the promise." *12100 Buckeye* at ¶ 28, quoting *Rucker v. Everen Secs.*, 2003-Ohio-1166, ¶ 24 (8th Dist.).

{¶ 48} "Promissory estoppel is an equitable doctrine that comes into play when the requisites of contract are not met, yet a promise should be enforced to avoid injustice." *APCO Industries v. Braun Constr. Group*, 2020-Ohio-4762, ¶ 60 (10th Dist.), citing *Olympic Holding Co., L.L.C. v. Ace Ltd.*, 2009-Ohio-2057, ¶ 39-40. "To be successful on a claim of promissory estoppel, '[t]he party claiming the

estoppel must have relied on conduct of an adversary in such a manner as to change his position for the worse and that reliance must have been reasonable in that the party claiming estoppel did not know and could not have known that its adversary's conduct was misleading.'" *Shampton v. Springboro*, 2003-Ohio-1913, ¶ 34, quoting *Ohio State Bd. of Pharmacy v. Frantz*, 51 Ohio St.3d 143, 145 (1990), citing *Heckler v. Community Health Servs.*, 467 U.S. 51, 59 (1984).

{¶ 49} For the same reasons as noted above, and continuing to construe the evidence in a light most favorable to Nouraldin, we find that genuine issues of material fact remain as to whether appellees made a promise upon which Nouraldin relied. The trial court therefore erred in granting summary judgment on Nouraldin's promissory-estoppel claim.

### 3. Breach-of-Fiduciary-Duty and Declaratory-Judgment Claims

{¶ 50} Nouraldin's complaint also asserted a claim for breach of fiduciary duties and sought a declaratory judgment setting forth the parties' rights and responsibilities under the claimed partnership agreement and the fiduciary duties thus owed to him.

{¶ 51} However, it appears that Nouraldin has abandoned these claims. In responding to the motions for summary judgment, Nouraldin only addressed the claims for breach of contract and promissory estoppel. He did not provide any arguments or evidence to demonstrate the existence of genuine issues of material fact with regard to the claim for breach of fiduciary duties or the declaratory-

judgment claim. Accordingly, summary judgment was properly granted on these claims.

{¶ 52} Nouraldin's second assignment of error is sustained in part. The judgment of the trial court granting summary judgment on the breach-of-contract and promissory-estoppel claims is reversed. The grant of summary judgment on the breach-of-fiduciary-duties and declaratory-judgment claims is affirmed. This matter is remanded for adjudication of Nouraldin's breach-of-contract and promissory-estoppel claims.

{¶ 53} Affirmed in part, reversed in part, and remanded.

It is ordered that the parties share costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
EILEEN T. GALLAGHER, JUDGE

LISA B. FORBES, P.J., CONCURS;
SEAN C. GALLAGHER, J., CONCURS IN PART AND DISSENTS IN PART (WITH SEPARATE OPINION)

SEAN C. GALLAGHER, J., CONCURRING IN PART AND DISSENTING IN PART:

{¶ 54} I concur in part with the majority's decision affirming the dismissal of Nouraldin's claim for breach of fiduciary duties and declaratory judgment. I dissent from the remainder.

{¶ 55} Nouraldin concedes no binding contract to form a partnership under R.C. Ch. 1776 exists. The letter of understanding discusses an agreement as between him and Swipe USA "as to a partnership arrangement," without specifying any specific type of "arrangement." Nouraldin then concedes in the affidavit attached to the complaint that he and Swipe USA "were to enter" an agreement should a future condition arise, thus negating his allegations of an oral agreement being executed. And Nouraldin also conceded that Swipe USA refused to "enter into the partnership agreement" following the purchase of the property, conclusively demonstrating that no contract or partnership agreement existed. In John Chandler's affidavit submitted by Nouraldin, Chandler confirmed that the parties did not have an agreement at the time the letter of understanding was drafted but, in fact, Kish "was open" to Nouraldin's offer of a 75/25 split. Chandler then confirmed that Nouraldin did not accept Kish's terms to finalize the partnership arrangement: "At that point, Dr. Nouraldin stated he would not be a partner at those terms."

{¶ 56} In this appeal, Nouraldin claims that Kish made statements "holding" him out as a partner after the purchase of the property when Kish referred to Premier Wisdom Enterprises, LLC, as "my funding partner." According to Chandler, that was one of Nouraldin's "fund-holding companies," a fact Nouraldin

confirmed in his own affidavit. Premier Wisdom Enterprises, however, is not a party to this action. "'Limited liability companies are entities separate and distinct from their owners.'" *Garg v. Scott*, 2024-Ohio-1595, ¶ 10 (8th Dist.), quoting *First Merit Bank, N.A. v. Washington Square Ents.*, 2007-Ohio-3920, ¶ 15 (8th Dist.); *see also Chagrin Realty, Inc. v. Testa*, 2018-Ohio-4751, ¶ 17, quoting *Agley v. Tracy*, 1999-Ohio-61. Nouraldin personally cannot assert claims on behalf of the corporation, regardless of the alleged fact that he is the sole owner. *Yousef v. Yousef*, 2019-Ohio-3656, ¶ 15 (8th Dist.) (concluding that "[c]orporations maintain the right to sue or be sued independent of the individuals who own the entity").

{¶ 57} There is no dispute as to the lack of a binding agreement, oral or otherwise, as between Nouraldin and Swipe USA. Judgment in favor of the defendants on the breach-of-contract claim was proper. The allegations in the complaint, in fact, demonstrate that there was no agreement, only that there was an understanding that an agreement would be later entered. "[U]ntil parties execute the agreement, [r]eliance on a statement of future intent made prior to the conclusion of negotiations in a complex business transaction is unreasonable as a matter of law." (Cleaned up.) *Olympic Holding Co., L.L.C. v. ACE Ltd.*, 2009-Ohio-2057, ¶ 37. "Until the documents are signed and delivered the game is not over. Businessmen [such as the parties in this case] would be undesirably inhibited in their dealings if expressions of intent and the exchange of drafts were taken as legally binding agreements." (Cleaned up.) *Id.* Nouraldin and Swipe USA had an agreement to enter a future contract or partnership agreement, but that never came

to fruition.  According to Nouraldin's allegations, there was no binding partnership agreement executed and any discussions with Swipe USA representatives predated the letter of understanding such that any oral discussion cannot constitute a binding agreement, especially in consideration of Nouraldin's affidavit confirming that the parties merely agreed to enter a partnership arrangement after a future happening. Further, any funding partnership actually created was between Kish and Premier Wisdom Enterprises, a nonparty to this action.  Nouraldin cannot use Kish and Premier Wisdom Enterprises' relationship as a basis for his individual claims.

{¶ 58} And finally, as to the promissory-estoppel claim, there are no allegations supporting the element of detrimental reliance on the agreement to discuss a future partnership.  The alleged facts in support of the reliance element was Nouraldin's forbearance on purchasing the property himself.  Notwithstanding that intent, Nouraldin never attempted to finance the project personally.  The funding was through the nonparty Premier Wisdom Enterprises, Kish's "funding partner" such that any claim would accrue to that entity, not Nouraldin individually.

{¶ 59} As a result of the foregoing, I would affirm.